**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt@loker.law
Elizabeth A. Wagner, Esq. (317098)
elizabeth@loker.law
1303 East Grand Avenue, Suite 101
Arroyo Grande, CA 93420
Telephone: (805) 994-0177

*Attorney for Plaintiff*,
Gwendolyn Henry

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GWENDOLYN HENRY**<br><br>Plaintiff,<br><br>v.<br><br>**NATIONAL CREDIT SYSTEMS, INC.; AND EXPERIAN INFORMATION SOLUTIONS, INC.,**<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>I. **FAIR CREDIT REPORTING ACT;**<br><br>II. **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT; AND**<br><br>III. **CALIFORNIA IDENTITY THEFT ACT.**<br><br>**JURY TRIAL DEMANDED** |

**CASE NO.:** *Henry v. National Credit Systems, Inc., et al.*
**COMPLAINT**

# INTRODUCTION

1. The United States Congress has also found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

3. In enacting the California's Identity Theft Act, Cal. Civ. Code §§1798.92 et seq. ("CITA"), the California Legislature found that the right to privacy was being threatened by the indiscriminate collection, maintenance, and dissemination of personal information. Accordingly, CITA was enacted to combat the lack of effective laws and legal remedies in place. To protect the privacy of individuals, it is necessary that the maintenance and dissemination of personal information be subject to strict limits. Cal. Civ. Code §1798.1(a), (c).

4. GWENDOLYN HENRY ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of NATIONAL CREDIT SYSTEMS, INC. ("NCS"); and EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") with regard to fraudulent accounts reported to Plaintiff's credit report.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

8. Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

///

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

## JURISDICTION AND VENUE

10. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"); and, 28 U.S.C. § 1367 for supplemental state claims.

11. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"); (ii) the California Identity Theft Act, Cal. Civ. Code § 1798.82, et seq. ("CITA"); and, (iii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, et seq. ("CCCRAA")

12. Because Defendant conducts business within the State of California, personal jurisdiction is established.

13. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

14. Plaintiff is a natural person who resides in Los Angeles County.

15. Plaintiff is a "Victim of Identity Theft" as that term is defined by Cal. Civ. Code § 1798.82(d).

16. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c); and, Cal. Civ. Code § 1785.3(c).

17. NCS is a debt collector operating from the State of Georgia.

18. NCS is a furnisher of information as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

19. Experian is a corporation located in the State of California.

///

20. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f); and, a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

21. Defendants NCS is also a "claimant" as that term is defined by California Civil Code § 1798.92(a).

## FACTUAL ALLEGATIONS

22. At all times relevant, Plaintiff is an individual residing within the State of California.

23. Prior to mid-2023, Plaintiff maintained a stellar credit history, maintaining a zero balance on all credit cards opened in her name and maintaining a consistent payment history.

24. On the basis of Plaintiff's good name and reputation, in mid-2023, Plaintiff sought to obtain a home loan, so that she could fulfill her dreams of home ownership.

25. Plaintiff was shocked to discover however, that despite her diligence in maintaining a positive credit history, there are several serious and derogatory inaccuracies on her credit reports.

26. These inaccuracies have led to significant financial struggles that have impacted her life significantly.

27. Additionally, on or about August 4, 2023, Plaintiff's parents received two letters from defendant NCS, addressed to Plaintiff.

28. While Plaintiff's parents reside in Woodbridge, Virginia, Plaintiff has at all times relevant resided in Calabasas, California. Acting promptly, Plaintiff's parents transmitted to her copies of the correspondence addressed to her.

29. Said correspondence consisted of two letters. The first regarding an account ending in 6358, alleged that Plaintiff was responsible for a balance of $569.00 originating from a merchant, "StoreSmart Fayetteville NC LP."

30. The second correspondence was regarding an account ending in 6361, alleged that Plaintiff was responsible for a balance of $1,385.80, likewise originating from the merchant, "StoreSmart Fayetteville NC LP."

31. On information and belief, Plaintiff understands that StoreSmart Fayetteville NC, LP is a partnership in the business of renting storage units. Plaintiff has never rented a storage unit from this company, let alone in North Carolina.

32. On information and belief, Plaintiff believes that NCS purchased or was assigned the alleged debts from StoreSmart Fayetteville NC, LP. NCS's correspondence of August 4, 2023 represents their attempt to collect the erroneous debts.

33. On September 12, 2023 Plaintiff submitted a written dispute to NCS and Experian via certified mail.

34. This written dispute included Plaintiff'd supporting documentation demonstrating Plaintiff's identity and the factual basis for Plaintiff's dispute.

35. Plaintiff's September 12, 2023 dispute also contained a narrative explaining why the continued credit reporting was inaccurate and causing Plaintiff damages.

36. Experian was then required to conduct their own reasonable reinvestigation into these accounts on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

37. NCS was also required to conduct a reasonable reinvestigation into these specific accounts on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

38. NCS failed to review all relevant information provided by Plaintiff in the dispute to the Credit Bureaus, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

39. Due to NCS's failure to reasonably investigate, NCS further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

40. By inaccurately reporting account information after notice and confirmation of its errors, NCS failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

41. Plaintiff received notification from Experian in October 2023 that Experian had verified these debts as a valid obligation owed by Plaintiff.

42. To date, NCS's inaccurate credit reporting remains on Plaintiff's Experian Credit Report.

43. NCS submits inaccurate credit information regarding Plaintiff to the Credit Bureaus every thirty days.

44. Experian did not provide notice to Plaintiff that Plaintiff's dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

45. Defendants' investigations were unreasonable.

46. More specifically, Defendants should have discovered from their own records, including Plaintiff's formal dispute, that the information being reported was inaccurate and materially misleading since Plaintiff had never obtained or utilized the credit card at issue herein.

47. By inaccurately reporting account information after notice and confirmation of its errors, NCS failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

48. Through this conduct, NCS violated Cal. Civ. Code § 1785.25(a) by furnishing information to consumer reporting agencies that CNS knew or should know was inaccurate.

///

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

49. Experian also failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.

50. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting by communicating Plaintiff's dispute with Experian were fruitless.

51. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was willful.

52. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was reckless.

53. Defendants' failure to correct the previously admitted inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

54. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

55. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

56. Throughout this ordeal, Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this large debt mischaracterizes Plaintiff as someone that financially overextends himself and harms Plaintiff's credit score.

57. Plaintiff has been unable to obtain the credit benefits she should have earned by his stellar payment history.

58. While Plaintiff was thorough in Plaintiff's disputes at all times, each Defendant merely responded with form letters that failed to take into account any of the specifics identified in Plaintiff's disputes.

///

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

59. Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this large delinquency mischaracterizes Plaintiff as someone that avoids Plaintiff's financial obligations and significantly harms Plaintiff's credit score.

60. Despite Plaintiff's repeated attempts, Defendants continue to report an invalid debt to Plaintiff's credit report.

61. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, preparing and mailing dispute letters, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment of credit denials. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendants' inaccurate and derogatory information, without success.

62. Specifically, Plaintiff's efforts to obtain a home loan have been frustrated, as well as higher interest rates on existing credit accounts. Additionally, Plaintiff's tarnished credit history has hindered her ability to secure new credit lines, resulting in less favorable terms and outright rejection of credit applications. These inaccuracies have in turn restricted her opportunities for furthering her education, purchasing a new vehicle, and investing in business ventures. Additionally, because of our societal reliance on credit reporting, even Plaintiff's ability to seek potential employment opportunities has become hindered.

63. Plaintiff has spent countless hours disputing this inaccurate information with Defendants in an attempt to provide any and all information needed for the investigations.

///

64. Plaintiff is not able to calculate the total pecuniary loss at this time but will utilize the services of an economist.

65. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

66. Similarly, Experian also received documents in connection with Plaintiff's dispute that directly contradicted the inaccurate credit reporting.

67. These documents should have caused Experian to remove the inaccurate information from Plaintiff's credit report.

68. By intentionally reporting continuing obligations, Experian acted in conscious disregard for Plaintiff's rights.

69. To report an ongoing obligation despite the invalid nature of this account shows that Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

70. Since Plaintiff's efforts to be absolved of the invalid debt were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF
## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. §§ 1681-1681X (FCRA)
## [AGAINST ALL DEFENDANTS]

71. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

73. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

74. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

## COUNT II
## VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT
## CAL. CIV. CODE § 1785.1, ET SEQ.
## [AGAINST NATIONAL CREDIT SYSTEMS, INC.]

75. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

77. In the regular course of its business operations, NCS routinely furnishes information to credit reporting agencies pertaining to transactions between NCS and NCS's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

78. Because NCS is a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), NCS is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

79. Since NCS received all documents required to determine the inaccuracy of NCS's reporting, NCS should have known to update said reporting.

80. NCS also should have determined that NCS's reporting was inaccurate through review of their own account notes and records; and, as a result of the information provided with Plaintiff's disputes.

## COUNT III
## VIOLATION OF CALIFORNIA'S IDENTITY THEFT ACT
## CAL. CIV. CODE §§ 1798.92-1798.97 (CITA)
## [AGAINST ALL DEFENDANTS]

81. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

82. The foregoing acts and omissions constitute numerous and multiple violations of CITA.

83. As a result of each and every violation of CITA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5); a civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6); costs pursuant to Cal. Civ. Code § 1798.93(c)(5), attorney's fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5) and any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5).

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

- An award of actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5);
- A civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6);
- Attorneys' fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5);
- Any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5);
- An injunction preliminarily and permanently enjoining Defendant from engaging in the unlawful debt collection practices stated herein;
- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendant for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendant for each incident of noncompliance of the FCRA;

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against each named Defendant individually;

- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against each named Defendant individually;

- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);

- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);

- Punitive damages according to proof as to the FCRA; and CCCRAA; and,

- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

84. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: November 16, 2023                              Respectfully submitted,

                                                      **LOKER LAW, APC**

                                            By:  ___/s/ Matthew M. Loker___
                                                  MATTHEW M. LOKER, ESQ.
                                                  ATTORNEY FOR PLAINTIFF